Case 23-1439 Mary Yanick v. Kroger Company of Michigan. Ten minutes for appellant, five minutes for amicus curiae, 15 minutes for appellee. Mr. Berg, you may proceed for the appellant. Good afternoon, your honors. May it please the court, I am Jeffrey Berg for the appellant, Mary Ellen Yanick. Your honors, the claim being made by, the claims being made by Ms. Yanick. I'm sorry, did you want to reserve time for rebuttal? Oh, I did already. Yes, two minutes for rebuttal. Thank you. So I have eight minutes and then two minutes. Thank you. Your honors, let me start in a different way. The ADA in its recitation of its purposes, which was amended and added to the original statute in 2008, specifically mentions that individuals with disabilities continually encounter various forms of discrimination, including certain barriers and relegation to lesser services, lesser programs, lesser activities, and lesser jobs. This is articulated directly in the preamble to the statute's substantive provisions. And that is exactly what happened in Ms. Yanick's situation. To sort of step back, zoom out, Ms. Yanick, who was a member of management, learned she had breast cancer, raised her hand and said to her supervisor, I have a disability. This is essentially what she said. And this new supervisor within the next two weeks was all over her saying, well, maybe you should step down. This happened continually several times before Ms. Yanick actually went on medical leave, had her surgery, came back, and within a week, the same thing. She was saying to her supervisor, I'm back, but I just worked 53 hours and it's very hard on me. This amounted to a request for accommodation. The supervisor, Schnepp, responded by saying, again, well, maybe you should step down. This is exactly what the ADA is trying to prevent, the existence of a disability in a person, followed by their being pushed or relegated into a lesser situation. Just assuming that you're right about all of that, I mean, I think there are a lot of interesting aspects of this case, but one is whether your client was specific enough, whatever that means, in requesting an accommodation. And basically, your argument, as I understand it, is she said she was being forced to work too hard too soon, and she couldn't do the work. So have you found any cases that you consider to be analogous in requesting an accommodation as opaquely as she did here? Well, I don't think I can point the court to any particular cases, but I think they're out there. There's many of them. It would be helpful if we had some. They're out there, and there are many of them. Why don't you cite them? I think that what I did cite was the pretty much established jurisprudence that says an employee doesn't have to point to a specific, detailed, concrete form of accommodation to receive an accommodation. And the party, once the employee brings up the fact that they have a disability, the employer and the employee are both required to now engage in the interactive process. Well, but you can't just say, I have a disability. You have to say, I have a disability, and I need, and you don't use the word accommodation, but using some other words, you have to ask for an accommodation. So I think the question is, how opaquely can you do that? Can you just hint at, gosh, it might be nice if I could work less? I would say, using the court's terms, no. You can't hint, but when you're dealing with a problem as well-known and understood as breast cancer, a mastectomy, the physical, mental, and emotional aspects of it that go into recovery, which are very great and very burdensome to a person, then it sort of decreases the detail that you need to convey. And I think it's the Green case that the EEOC cited in its brief. They said that an employer has more information than the employee as to what would be a proper accommodation for a request that is not necessarily specific. The employer has more information, which is why the employer has the duty to engage in the interactive process, unlike what this Supervisor Schnapp did, which was to simply say, I think you should step down, which she said to the plaintiff immediately upon hearing that the plaintiff had cancer. How many hours did, so wait, let me just ask, what is the accommodation that your client wanted? What did she want? She wanted, okay, a manager does various things, paperwork, supervising persons who, this is so a manager has to keep records and direct people and sometimes go out and move things around. So it's not a job where you can point to specific, like the language that the defendant brings up is pointing to a key obstacle that you need an accommodation to overcome. There's no key obstacle here. The idea is that it's well known that breast cancer makes a person who has gone through surgery. Well, since you talked about 53 hours, is there any reason that you won't just say, I need to work less for a while? I and my argument, you're saying, or why she didn't? No, no, no, I was getting to that. I think that it should be obvious to the employer, and this woman has been there for 16 years performing well. So she wanted to work less, less than, she worked overtime. Yes, although she was salaried. So overtime, you don't get paid overtime in a salaried position. Well, the testimony is that the manager asked how did you, somebody had to approve the overtime and I think there's testimony in the record that she had to have somebody approve her  Your Honor, that's right, I'm mistaken. You're right about that. Okay, so was she forced to work overtime? And is what she wanted to work full-time, with no overtime? No, I think that she I just, did she want to work less? Did she want to work a full-time job, 20 hours a week? What did she want? Okay, so she was returned to work without restrictions by her physician. Now I think the restrictions are, the idea of a restriction is a broad Why can't you answer the simple question, what did she want? Yes. Not all this other embellishment. Okay, she wanted to be given leeway to work less hours if she needed it. Leeway to go to the doctor if she needed it without criticism. She wanted to be criticized less by SHNEP, who badgered her constantly. Yes, so working less hours and being given the human consideration to perform her job in her recovering state. How many hours did she work in the second week she was back? There's no record of that, Your Honor, but it was full-time. Right, but she comes in, she's worked 53 hours the first week. Then there's the meeting at which she makes the request. She quits in the following week, so we only have a two-week period. And you can't establish how much she worked after she made the request. So how do I know she wasn't accommodated? Well, the supervisor, SHNEP, did not come forward with any type of interactive process to discuss how Ms. Yannick could keep her managerial job. She said, in fact, she said, I can't imagine what you're going through, but business is business, which is, I think, a pretty cruel thing to say. I don't, yeah, I don't, I mean, I'm not disputing that people didn't behave super well here. But, you know, the question is, did they behave illegally? When you just said she wanted not to be badgered, are there any cases where that's a reasonable accommodation? I haven't seen such a case, Your Honor. It just seems to make common sense. Yeah. And also the argument made by the defendant that mere badgering and mere criticism is not enough to establish a constructive demotion. I counter with, oh, and the expression that the courts use is not enough without more to establish the constructive demotion. But the counter to that is that each time the supervisor would badger the plaintiff, she was doing it after the plaintiff had said, I need help, I need to leave. And not only that, but Schnepp, the supervisor, did not follow Kroger's procedure that's outlined in the handbook, which states that if you're going to start a discipline process, do a verbal coaching, and after that, put it in writing. I see your red light is on. So if you want to wrap up with one sentence. I'm good, Your Honor. That's all right. Thank you. Thank you. Julie Gants on behalf of the EOC as amicus. I wanted to point out that the district court said in its opinion that her comments were specific enough to request an accommodation, but then faulted her for not identifying the limitations that her cancer was causing. And our interest is that the interactive process is triggered by the notice that one week back from a lengthy leave for her surgery, and that if you look at the context, she said that she was struggling physically to do the job, that she needed more time to get used to the work, and pointed out that she had worked 53 hours the prior week. If you just stop right there, does the EOC take the position that that's enough for a request for an accommodation? Yes, that it would be, a jury could find that it was enough. Again, this is summary judgment. So the question is... Do you have any cases? Your co-counsel basically says, well, there are lots of cases out there, but he didn't mention any to us. So are there any cases that find that comments like this are sufficiently specific? There are cases that talk about the context surrounding the request, what the employer said, what the employer knew about the person's disability is important, as well as what the employee said. And those are cases like Lee's and Smith v. Henderson and King. There's no case with exactly similar comments, but every case is very fact-specific and has to be evaluated on its own. And the point is that the court basically compressed the need to identify a reasonable accommodation at the notification stage. When that comes during the interactive process, which is a collaborative process between the employer and the employee, to find an accommodation that works for both of them. So the court basically skipped ahead and then granted summary judgment on that. When a jury could find that she had said enough, given that it was one week back from surgery, that Kroger knew she had cancer, and that she identified the hour she was working, suggested that she needed an adjustment to her schedule. So that could take the form in working fewer hours, it could be breaks, but because they never got to the interactive process... So you're saying that's enough to... I mean, first of all, did they get to the interactive process? So she first of all says, yeah, I need... Generously construed, she said, I need to work less. And I need some training because they're put in new processes and they're new to me. She got the training. So isn't that kind of step one of the interactive process? And then maybe it was incumbent on her to say, that's great, thanks for the training, but you're not listening to me, I also need to work less. The jury could certainly take that into consideration, but the jury could also note that Schnapp, after Yannick said, and noted that her job, she wasn't doing a very good job when she was first back, and said, how do you think things are going? In response to that, she says, I am struggling physically to do the job. I worked 53 hours and I need time to get used to this. And then Schnapp said, who approved her overtime? You should step down and I'm going to start writing you up. I also wanted to point out that she came back with no restrictions, in part because Schnapp testified that she told her she could not come back with restrictions. So that... And the ADA is an ongoing duty by the employer to accommodate her limitations. So if she thought, okay, I'm coming back to work and I think I can do it, but then after a week is, I don't know what her symptoms were, but really struggling to get her job done, she may still ask for reasonable accommodation, even if she came back with no restrictions. So, and the court... Oh, is my time up? Can I ask a question about two other things? First of all, do you think she exhausted her retaliation claim? We didn't take a position on the retaliation claim, sorry. You don't have a position on that. And what about the adverse action, both for the retaliation claim and the... The constructive demotion? Yes. We just wanted to point out that because there was a potential failure to accommodate claim that could support her constructive discharge claim, that the court should re-evaluate the claim, including the failure to accommodate. Have you heard of any cases that saying it's an intolerable working condition, such that you'd have no choice other than to quit on facts like these? Even if...  Yeah. No, Your Honor. It's a very demanding standard, and she would have to show... The court would have to re-evaluate if the failure to accommodate, along with the pressure to step down, the badgering, all of it collectively would rise to the level of being so intolerable that a reasonable person in her position would feel compelled to step down. So it is a demanding standard. We just wanted to point out that the court should evaluate it without the extra intent requirement after Green, and with all the facts, including the failure to accommodate, which we are urging you to reverse on that. If we excluded the intent, it's... I mean, we could decide this as a matter of law, and it would be your position that it is or is not. Sorry, could you... I mean, there's no reason the district court has to make this call in the first place, right? No, the court didn't. It's a matter of law. The court just recited this extra intent requirement that we feel has been repudiated by Green versus Brennan.  So we were just reminding the court that it should not be one of the elements of a claim. Anything further? All right, thank you. Good afternoon, Your Honors. Terrence Migliu on behalf of the appellant, the Kroger Company of Michigan. A couple of things before I delve into what was said on the other side. Judge Roberts found, with respect to the retaliation claim and with respect to the discrimination claim, she focused on whether or not the circumstances were tolerable to a reasonable person that would cause somebody to step down from the position she was in. But under all the case law, what's critical is that if you're going to make the argument that you're stepping down or resigning because of a discrimination claim or a discriminatory environment, the environment itself has to be discriminatory. It's the discrimination that causes somebody to say, I can no longer work here. She never got to that point, despite the fact that there was undisputed testimony by the supervisor, that this was the same way that she counseled each and every one of the department managers. So our position is that, aside from the intolerability, it could be overruled and you could affirm on the basis that there was no proof that the work environment was a result of discrimination or that it was a result of retaliation. And she went immediately to the intolerability requirement and found that that was enough to avoid the plaintiff's claim in a prima facie case on both counts. As I cited in the brief, this court has recently decided the case of Chepanka versus Asenia, where the employee there had a shoulder injury and claimed that he wanted to work from home, despite the fact, as in this case, his doctor had cleared him to return to work. And in that particular instance, he claimed that he had to resign because they weren't going to allow him to return to work. So this court, in that particular case, addressed two of the key elements that's involved in this case. Number one, whether it's a constructive discharge, and in fact, answered the question as to whether or not it needed to be deliberately intended by the employer or not. And even though Judge Roberts cites that language from, I think, Leeds or from the Logan case, that an employer has to intend it, she never really focuses on that. And the appellant never raises that. That's just something that apparently the EEOC wants to clarify. She focused only on the intolerability. The case really helps you one way or the other. I thought the end result in that case was because working at home wasn't going to impact the shoulder problem. Right. You're going to have the same shoulder problem whether you're at home or whether you're at work. Exactly. The point of the matter is, and the court found, that there was not a request for an accommodation because working from home didn't address his shoulder problem. Let's talk about the request for accommodation because that's seemingly what this case is all about. So do you agree with Mr. Berg and Ms. Gantz that you have to look at whatever the statements the employee made in the context in which they were made? Yeah, I agree with that. So there's no question here that the context was this woman is coming back from invasive intensive surgery, right? Well, that's not the context that the employer was faced. What the employer had in front of them is a release of return to work without restrictions after she had been off. Come on, Schnapp knew the whole story, right? I mean, she knew that she had cancer. Correct. She knew she was being operated on. Correct. But if you look at the June... So she gets a return to work letter. You're not saying that that then somehow inoculates the employer from then having to accommodate somebody when their actual return to work doesn't work out because they can't do it? No, I'm not saying that at all. But what I'm saying in the context is what's important as what Judge Roberts ruled and what's in the Chams case is that there has to have been some... The request has to somehow relate to the need for the medical necessity of the employee's condition. And in this case, if you look at her testimony on that June 18th meeting, what she says is, she's asked, how are you doing? And she says, I'm struggling because last week I had to work 53 hours. And I'm tired. And so... Yeah, I'm tired because I just had breast cancer surgery. But that's not what she testified. And if we're focusing... Why would she have to say that in the context of this case? I'm dumbfounded by your position. You're asking for her to have her lawyer at her side coaching her as to what to say. The supervisor simply asks her, how do you think it's going? And she says, I'm struggling because I had to work 53 hours last week. And it's hard on... Doesn't she say something about, I'm tired, it's hard on me? Wouldn't the reasonable answer be, well, what do you need? What would help? But there's no indication from her that that's what she is asking for. Are you holding your... Resting your position on the employer could not connect the dots between, I'm tired and I have breast cancer and just had surgery? Or is your position that she didn't clearly articulate that she needed to work less? That she clearly did not indicate whether it was working less or working a lighter load or whatever. She clearly didn't articulate what the request related to. Are you denying that that was related to the breast cancer? Am I denying what is related to the breast cancer? Is the position of... She says it's hard for her physically. I don't know whether she says it. I don't know why she says it's hard for her. Anybody who works 53 hours would find it to be tiring. Really, that's your position. No, I can see that connection. Clearly, I can see that connection. But the question is whether or not, what is she requesting and what was she requesting at that time? So if she, let me ask you this question. I think the question is how clear does the request need to be? If she had said, I just got back, I need to work less. You would say that's a request for an accommodation? I would say that. So the problem is she didn't say I need to work less. So I think what this case comes down to is if the employee makes some kinds of statements that might cause the employer to think maybe this is a request, but maybe it's not, is it the employer's duty to inquire whether that's a request for an accommodation or is it on the employee to clearly ask for one? The Fifth Circuit just decided a case like this called Mueck versus Lagrange Acquisitions. It's a 2023 case. They say if it's an ambiguous request, the employer does not have to make further inquiry. But I don't know, that's just the Fifth Circuit. That's not us. So what would your view be on that? How clear does she have to be in the first place? Well, she would have to make a request for some kind of accommodation. And saying that I'm just tired, I can see how it would connect to surgery, connect to working 53 hours. But that begs the question, and appellants counsel said, well, because she wanted them to stop bugging her about her job duties. But in the context of this conversation, I don't believe there's enough specificity for the employer to say, okay, what can we do for you? Because they do react in one end by saying, well, we can get you more training to bring you up to speed on these programs. Would we be right in an opinion, regardless of which way it comes out, to say that an employer needs to draw reasonable inferences from what the employee says in the context of what's going on? Would you be writing a reasonable opinion that the employer would have to draw inferences? Are you opposed to that as a matter of law, that an employer is required to draw reasonable inferences from what the employee does say? Well, it depends upon what the reasonable inference is. I'm not asking what the reasonable inference was here. I'm just trying to find out if you agree with a legal proposition that you don't look at just the words the employee uses, that an employer is required to draw reasonable inferences from those words. Would that be correct? I would not limit it just to the words I would say within the context in which the request arises.  But you'd limit the context to the specific meeting or the context of what the employee had gone through? All of the above, including what the doctors say in terms of the restrictions. So if we cut to the chase, why was it not a reasonable inference for the employer to draw from what she said that she needed to work less, regardless of how inartful or incomplete her statements might have been? Well, there's a couple of things that are operating. First of all, she asked her who approved the overtime because she shouldn't have been working that kind of overtime in the first place. So that's an interesting question to me. Was she required to work overtime? The record to me seems to suggest that she put in for the overtime, suggesting that she thought she needed more than 40 hours maybe to catch up or do whatever, but she wasn't required to. And then, but I don't know. And then I'm also interested in what happened the next week. Did she have to work overtime again? Or how many hours did she work? We don't know that because there was no discovery and that was never offered to the district court in that point. In fact, she resigned the next week without being, which is the next step of it, that if she worked again and couldn't do it and wanted it. And then the other thing was in the context, she met the next day with HR people and never raised the issue about wanting to get a lighter load or anything like that. So there's a number of instances when that would have ordinarily come up, but she was focused on the fact that she felt the supervisor was badgering her. And in fact, when she steps down, she says, I was just tired of her picking on me and she broke me down. So it's not, in my mind, the request to your point, Judge McKee, happens in the context. If it's not always gonna be a cancer issue, it may be just a physical issue in terms of lifting or pushing or whatever. So in the context of what the medical restrictions are and what the employee's experiencing. But in this case, and I actually disagree with Judge Roberts that it constituted a request because there's nothing she says. And it's in response to it, how's it going? How do you think you're doing? And she says, I'm tired, I'm struggling. I mean, the work can be hard if you haven't been working for several months. And that's what she says. And in fact, if you look at what she submitted. Kroger was concerned that she had a right to work letter and that this request, whatever it was or wasn't, seemed inconsistent with her being sent back to work with no restrictions. Kroger certainly had the right to say, well, if you think you need a change in your work environment, you gotta go back to see your doctor, right? Correct. I'm just curious, why didn't you do that? Well, first of all, it wasn't me, but why she didn't do that, I don't know because I don't see, if you look at that conversation in the context, it sounds like to me, she's saying the work is difficult for me because I haven't been working in it for so long. So that to me is what- Working is because of her medical- Absolutely, but she's been away from jobs and she said, I need time to catch up kind of thing, which is what would ordinarily be if you were away from work for four weeks. So I don't necessarily agree that the connection should have automatically been there, that she needs to catch up because of her cancer diagnosis. Let me ask it to you this way. We talked about this interactive process, that's EEOC always pushes interactive process. Is it your view that there was nothing that should have triggered any process or is it that you adequately did respond to her? In other words, was the process triggered or simply it was never triggered in your view? I don't believe that under the law it was triggered because as I agreed with Judge Roberts, it wasn't specific enough to address a medical condition that she had and that's what the law sort of is. And so you're resting on the sort of those cases about the key job of the position of the job because I thought the judge really did say that she did make a request. Yeah, because the request has to, according to the case law, address key obstacles that the employee faces in performing the duties of the position. Okay, but you did, but you seem to agree that the judge said that she did make a request, you're just saying it wasn't a good enough request. Yeah, and not in terms of its specificity to the request, like give me a chair, an ergonomic chair, it was that it didn't connect to her medical condition. And again, that's where I have some problem because it seems so obvious that the medical condition would be something that is somewhat debilitating in a physical job and she makes statements that are certainly one could draw an inference that it has to do with the physical strenuousness. Here's an important point, this supervisor had been counseling her about meeting expectations, which she admits were legitimate expectations. So this is a continuation of that conversation in the context of how's it going, you're still not meeting expectations and so she says, well, I'm struggling because I haven't been back at work. So to me, that context even goes before the June 18th meeting, it goes through these other meetings where she's- She had been having some of that even before she took the leave for surgery, right? Absolutely correct. So the understanding was that, is this just more of the same thing that she's not getting this done? And then she says in response, well, how was it going? I've been struggling because I've been away from work. Well, we've been talking about whether Yanick said enough to constitute a request for an accommodation. Let's look just for a moment, even though your time is up at SNEP's response. If we disagree with you and we agree with the district judge just hypothetically, that she said enough to constitute a request for an accommodation, do you think Yanick's response, excuse me, SNEP's response was enough to satisfy Kroger's duty to begin the interactive process? With what we have frozen in time from that conversation? Well, in hindsight- That's all we have. In hindsight, of course, I'd rather be in front of you saying, well, she asked her what she needed and she said, stop bugging me. But in retrospect, I don't think, I really don't think in the context of all of this, a continuing performance deficiency that that would immediately spring to a store manager's mind that what she's telling me is that she- Let me frame it a slightly different way and then I'll quit. Is there enough, if we find that there was a sufficiently specific request for an accommodation, would it be then a jury question as to whether SNEP's reply and response was adequate to satisfy the employer's duty under the act? No, I don't believe that would be the case. And what I do believe is if there were further conversations that the resignation from the position took all of that out of the mix and that by resigning, there wasn't the opportunity. And the other thing is- And that's a different question, whether something obviated the duty down the road a week later.  All right, thank you. Let me ask you one more question that just occurred to me. Is it a question of fact whether she, whether Ms. Yannick did enough to request a reasonable accommodation? I mean, obviously the words she said, if there were a dispute about I asked to work less and the employer says, no, you never asked. Obviously that's a fact question. But is the, whether the words that she said amounted to a reasonable request for an accommodation under the ADA, is that a fact question or a law question? Well, the courts have treated it as it's illegal. It can be decided as a legal question is what they've said. Because as you see the analysis from Judge Roberts, the question is, is whether there is enough. Now, there may be a question of fact as to whether somebody said something or didn't say anything but that's a completely different scenario. And I don't mean to say that- I don't think there's testimony in dispute here. No, there isn't. But it's interesting because if you look at her exhibit C to what was submitted to the trial court, she says, although I was, this is her declaration. She says, although I was struggling, I was meeting the standard. In other words, I was performing satisfactorily. And then she says in exhibit E regarding the June meeting, it was hard for me physically after they rolled out these programs, I needed to get used to all the work after being off. I mean, that doesn't really tell me and suggest to me that maybe it's a go slow thing, but it really doesn't say, it doesn't strike me as being specific as to because I had cancer surgery and because I had a biopsy and because I went through this whole thing. Wouldn't all that be obviated if the employer just said, what do you mean? What do you want? Well, yeah, of course it would if there was a question to be asked and she didn't ask it. There's no question about that. But it wouldn't have been obvious just from this employee who remember again in the context of a performance discussion is saying, I haven't been around a long time and I'm trying to get used to these programs and I've been working a lot and I'm tired. All right, any further questions? No, thank you. Okay, let's hear a rebuttal. Thank you, Your Honor. Judge McKee, when you asked counsel, should an employer be required to draw reasonable inferences from what an employee says in the context of asking for an accommodation? If the court does not, if the Sixth Circuit does not recognize that as a rule or as the right rule, then you're putting a burden on lay employees. It was a struggle, but I think eventually, Mr. Miglio actually conceded that.  Yes, it's okay to draw inferences and you draw the inferences within the context of what's going on. Within the context. I don't think you two really dispute that. Okay. And Judge Larson, you're talking about the issue whether Schnepp's response was response to Yannick's request for accommodation, which was vague. Whether it was adequate, is that a jury question or is that a question of law? I think that when it's a close call, it is obviously a jury question. And in the context of this being a Rule 56 motion for summary judgment, the inferences go in favor of the plaintiff, the non-moving party. And so you can't, it's not clear. Sometimes it will be a question of law when it's obvious. But the question of fact is a very large area of gray when it's just not clear. That should go to a jury. All right, unless you have anything further? I have nothing further. Okay, well, thank you for your helpful arguments. The case is submitted and the clerk may adjourn court.